[816 NYS2d 486]

MARGARET CRUZ, Respondent, v JAMES P. McANENEY, Appellant.

Second Department, May 2, 2006

APPEARANCES OF COUNSEL

*Carter Ledyard & Milburn, LLP*, New York City (*Susan B. Kalib* and *Jack Kaplan* of counsel), for appellant.

*Kramer Levin Naftalis & Frankel, LLP*, New York City (*Jeffrey S. Trachtman*, *Kerri Ann Law*, and *Eric J. Shimanoff* of counsel), for respondent.

**OPINION OF THE COURT**

FLORIO, J.P.

We are called upon to decide as a matter of first impression whether or not the confluence of the equitable doctrines of constructive trust and unjust enrichment, together with what we perceive to be the intent of New York and federal legislation enacted to compensate the victims and survivors of the September 11, 2001, terrorist attacks, requires that we affirm the denial of this motion to dismiss the complaint for failure to state a cause of action. We find that they do.

Viewed in the light most favorable to the plaintiff, as we must, in the context of this motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7) (*see Rovello v Klein,* 304 AD2d 638 [2003]), the following are the relevant facts:

Patricia McAneney (hereinafter Patricia) died intestate on September 11, 2001, as a result of the terrorist attacks on the World Trade Center. Patricia's brother, the defendant James P. McAneney, as her personal representative, filed a claim on her behalf with the September 11th Victim Compensation Fund of 2001 (hereinafter the Fund). While the claim was pending, the plaintiff, Margaret Cruz, submitted a statement of financial interest with the Fund, stating that she was entitled to all or part of any award because she was Patricia's loving, domestic partner for more than 15 years. At that time, the Fund's Special Master allegedly told the plaintiff that an award had already been approved in the sum of $278,087.42. This amount allegedly reflected Patricia's pain and suffering, as well as the economic loss of Patricia's survivors analogous to the amount awarded in a traditional wrongful death suit.

On March 10, 2003, the Special Master allegedly explained to the plaintiff that the approved award of the sum of $278,087.42

had been calculated as if Patricia were single and lived in a one-person household. However, the Special Master also expressed a willingness to recalculate the economic loss portion of the award and increase it by the sum of $253,454, to a total sum of $531,541.42, to account for the reality of the plaintiff's domestic partnership with Patricia. Allegedly, the Fund was willing to distribute the full award to the defendant, as personal representative for Patricia, provided he agreed in writing to distribute the increased portion ($253,454) to the plaintiff. However, the Fund was unwilling to mandate that the defendant, as personal representative, distribute the full award of the sum of $531,541.42 to the plaintiff as Patricia's sole survivor and beneficiary.

Additionally, some representatives of the Fund allegedly told the plaintiff that the Fund would not distribute the increased portion of the award to the defendant absent a settlement agreement regarding distribution of the increased portion to her. The parties then attempted to settle this matter. Unfortunately, they were unable to do so.

With negotiations at an impasse, representatives of the Fund allegedly informed the plaintiff on May 23, 2003, that it was in the process of distributing the award to the defendant, but assured her that only the smaller, original award of the sum of $278,087.42 would go to the defendant if a settlement could not be reached. While the plaintiff requested that the Fund mandate that the defendant distribute the increased portion of the award to her, the Fund refused to assist her.

Allegedly, the plaintiff continued her attempts to negotiate with the defendant, but he would not make any decision regarding a settlement before June 23, 2003, when his newly retained litigation counsel would be available for consultation. In the interim, on or about June 12, 2003, the Fund informed the plaintiff that it would soon distribute the larger award of the sum of $531,541.42, despite the absence of a settlement agreement. The alleged rationale for distributing the larger award under these circumstances was that the plaintiff could litigate the dispute in state court.

Ultimately, the defendant, as Patricia's personal representative, received an award of the sum of $531,541.42 from the Fund. He refused further negotiations with the plaintiff and declined to distribute any portion of the award to her. Instead, he distributed the entire award to himself, on the ground that he was Patricia's only surviving blood relative. The plaintiff,

therefore, commenced the instant action to compel the defendant to disburse all or part of the award to her.

The complaint asserts three causes of action based on the factual allegations stated above. The first cause of action alleges, inter alia, that the plaintiff is entitled, as the surviving domestic partner of the decedent, to the full award or a portion of the award, and the defendant, as the personal representative of the decedent, is under a fiduciary duty to distribute same to her.

Alternatively, in the second and third causes of action, the plaintiff asserts claims under the equitable theories of constructive trust and unjust enrichment. Under these theories, the plaintiff alleges that she is entitled to at least the sum of $253,454 because the Fund intended that this portion be distributed to her. Since this amount was added on to the original award to account for the reality of her domestic partnership with Patricia, the plaintiff alleges that the defendant has an equitable duty to convey, at least, this amount to her.

The defendant moved to dismiss the complaint in its entirety alleging, inter alia, that it failed to state a cause of action. The Supreme Court, inter alia, in effect, denied the motion. The defendant appeals, and we affirm.

The Fund was created by the federal government as title IV of the Air Transportation Safety and System Stabilization Act (49 USC § 40101, as added by Pub L 107-42, 115 US Stat 230 [2001] [hereinafter the Act]). The Fund's purpose is "to provide compensation to any individual (or relatives of a deceased individual) who was physically injured or killed as a result of the terrorist-related aircraft crashes of September 11, 2001" (Act § 403 [49 USC § 40101]). Thereunder, a personal representative may file a claim with the Fund on behalf of a deceased victim of the terrorist attacks (see Act § 405 [c] [2] [C]; § 406 [a] [49 USC § 40101]; 28 CFR 104.2 [a] [1], [3]).

A special master, appointed by the United States Attorney General, administers the Fund (see Act § 404 [a] [49 USC § 40101]). The special master's tasks include determining the eligibility of claimants and the amount of compensation to be awarded (see Act § 404 [a]; § 405 [a] [2]; [b] [49 USC § 40101]). Once the special master makes a determination regarding amount and eligibility, the special master authorizes payment of the full award to the claimant, who must be the personal representative in cases of deceased victims (see Act § 405 [c] [2] [C]; § 406 [a] [49 USC § 40101]; 28 CFR 104.2 [a] [1], [3]). Under

the Act, the personal representative has the duty to "distribute the award in a manner consistent with the law of the decedent's domicile or any applicable rulings made by a court of competent jurisdiction" (28 CFR 104.52), which has been interpreted as not precluding an expansive definition of who is entitled to be compensated (*see* 67 Fed Reg 11233, 11242-11243 [2002]).

In the instant case, it is undisputed that Patricia's state of domicile was New York and, thus, the defendant, as her personal representative, has a duty to distribute the award "in a manner consistent with the law" of this state (28 CFR 104.52). In this instance, the New York State laws enacted for the purpose of providing relief to the victims of the September 11, 2001, terrorist attack evince an intent to compensate surviving domestic partners, as family members, for their losses from this tragedy (*see* September 11th Victims and Families Relief Act, L 2002, ch 73 [hereinafter the State September 11th Act]). Based on the federal statutes and regulations regarding the Fund, a state's intestacy laws, while relevant, do not solely determine the identity of beneficiaries of the award (*see* 67 Fed Reg, *supra*)* and, notwithstanding the absence of a valid will, a partner in a longstanding domestic relationship may share in any award made by the Fund. Thus, the first cause of action, especially in light of allegations that the award was increased as a result of the plaintiff's application to the fund, stated a cause of action.

It is true that the plaintiff and Patricia were not married under the laws of any state at the time of Patricia's death and, thus, the plaintiff cannot be treated as the surviving "spouse" for purposes of the intestate distribution of the award from the Fund (*see Langan v St. Vincent's Hosp. of N.Y.,* 25 AD3d 90 [2005]). Nevertheless, the plaintiff may be entitled to some unspecified portion of the award from the Fund, albeit not the entire sum of $531,541.42 (*see generally* Feinberg, What Is Life Worth?: The Unprecedented Effort to Compensate the Victims of 9/11, at 68-69 [2005]).

Moreover, under principles of equity, the second and third causes of action also state viable claims for the imposition of a constructive trust and unjust enrichment. The ultimate purpose of a constructive trust is to prevent unjust enrichment and, thus, a constructive trust may be imposed " '[w]hen property

---

* It should be noted that nowhere in her complaint does the plaintiff allege she was the decedent's spouse. Rather, she alleges that under the New York laws relevant to compensation for victims of the September 11, 2001, terrorist attack, she qualifies as a family member.

has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest' " (*Sharp v Kosmalski,* 40 NY2d 119, 121 [1976], quoting *Beatty v Guggenheim Exploration Co.,* 225 NY 380, 386 [1919]; *see Matter of Wieczorek,* 186 AD2d 204 [1992]). The usual elements of a constructive trust are "(1) a confidential or fiduciary relation[ship], (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment" (*Sharp v Kosmalski, supra* at 121; *see Levy v Moran,* 270 AD2d 314 [2000]). However, these factors should be applied flexibly (*see Crown Realty Co. v Crown Hgts. Jewish Community Council,* 175 AD2d 151 [1991]; *Lester v Zimmer,* 147 AD2d 340 [1989]; *Hornett v Leather,* 145 AD2d 814, 815 [1988]). Thus, courts can and will impose constructive trusts "whenever necessary to satisfy the demands of justice" (*Simonds v Simonds,* 45 NY2d 233, 241 [1978]; *see Levy v Moran, supra*).

Similarly, to prevail on a claim of unjust enrichment, "a party must show that (1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered' " (*Citibank, N.A. v Walker,* 12 AD3d 480, 481 [2004], quoting *Paramount Film Distrib. Corp. v State of New York,* 30 NY2d 415, 421 [1972], *cert denied* 414 US 829 [1973]). "Unjust enrichment, however, does not require the performance of any wrongful act by the one enriched" (*Ptachewich v Ptachewich,* 96 AD2d 582, 583 [1983]). "Innocent parties may frequently be unjustly enriched" (*id.; see Simonds v Simonds, supra* at 242).

Viewing the allegations in the light most favorable to the plaintiff, justice in the instant case could conceivably require the imposition of a constructive trust, and concomitantly show that the defendant, in his personal capacity, would be unjustly enriched if he was also allowed to retain the portion of the Fund's award that was allegedly increased after the plaintiff's application to the Fund and in recognition of the plaintiff's loss of her lifetime partner.

The legislation enacted in our state following the September 11, 2001, terrorist attack also lends support to the argument that the plaintiff may be entitled, at least, to the increased portion of the award as compensation for her loss, such as a law providing same-sex domestic partners with certain rights to compensate for the loss of their loved ones due to this specific, horrific event. The Legislature declared, inter alia,

"that domestic partners of victims of the terrorist attacks are eligible for distributions from the federal victim compensation fund, and the requirements for awards under the New York State World Trade Center Relief Fund and other existing state laws, regulations, and executive orders should guide the federal special master in determining awards and ensuring that the distribution plan compensates such domestic partners for the losses they sustained" (L 2002, ch 73, § 1).

Although this legislation did not make any changes to this State's intestacy laws, it recognized that domestic partners should be compensated from the Fund for the loss of their loved ones (*see* Senate Mem in Support, 2002 McKinney's Session Laws of NY, at 1710).

Indeed, Governor George Pataki responded to the September 11, 2001, terrorist attacks in a similar fashion by authorizing "Crime Victims Awards" to all persons who could show a sufficient relationship with the victims, including "common ownership of property, common householding, shared budgeting and the length of the relationship between such person and the victim" (Executive Order [Pataki] No. 113.30 [9 NYCRR 5.113]). In addition, the legislature enacted section 4 of the Workers' Compensation Law for the specific purpose of providing death benefits to domestic partners of those killed as a result of the September 11, 2001, terrorist attacks (*see* L 2002, ch 467, § 1).

As Patricia's personal representative, the defendant has a duty to distribute the award to beneficiaries "in a manner consistent" with this State's law (28 CFR 104.52). As noted in the State September 11th Act (L 2002, ch 467, § 1, *supra*), this State has recognized that surviving domestic partners should receive compensation for the loss of their loved ones due to the September 11, 2001, terrorist attacks. Thus, if the plaintiff can prove that the Fund increased the award by the sum of $253,454 to account for the reality of her relationship with Patricia, it would be inconsistent with the legislation regarding the September 11, 2001, terrorist attacks to permit the defendant to keep that portion of the award for himself. Under these unique circumstances, if proven, the defendant could not in good conscience retain that sum and, as Patricia's personal representative, he would have a duty to convey such sum to the plaintiff. Accordingly, the plaintiff has succeeded in stating viable causes of action for a constructive trust and unjust enrichment.

In light of the above, there is no merit to the defendant's contention that EPTL 11-4.7 (e) bars the instant action. EPTL 11-4.7 (e) (2) provides that

> "*any person* who serves as the personal representative of a victim of the terrorist attacks on September eleventh, two thousand one, and who files a claim with the fund, shall have no liability to any person resulting from any actions *taken reasonably and in good faith* under the act, including but not limited to . . . the payment or distribution of any award received from the fund in accordance with any plan of distribution that has been submitted to and approved by the special master appointed under the act." (Emphasis added.)

Accordingly, EPTL 11-4.7 (e) (2) merely provides a qualified immunity to any personal representative who takes reasonable and good faith actions in distributing the award.

Again, viewing the allegations in the light most favorable to the plaintiff, such qualified protection is not available to the defendant in the instant case. According to the complaint, the defendant seeks to retain for himself the increased portion of the Fund's award that specifically accounts for the plaintiff's relationship with Patricia. Such action cannot be interpreted as having been taken in a reasonable and good faith manner, especially in view of this State's recognition that domestic partners should be compensated for the loss of their loved ones. Moreover, the Fund allegedly distributed the full award of the sum of $531,541.42 to the defendant, as Patricia's personal representative, with the understanding that the plaintiff could pursue any claim to compensation in state court. Accordingly, as the plaintiff alleges, in essence, the plan of compensation was still in dispute when the award was distributed to the personal representative. Under these circumstances, EPTL 11-4.7 (e) does not bar the instant case.

Finally, contrary to the defendant's contention, section 405 (b) (3) of the Act (49 USC § 40101) likewise does not bar the instant case. That section provides as follows:

> "Not later than 120 days after that date on which a claim is filed . . . the Special Master shall complete a review, make a determination, and provide written notice to the claimant, with respect to the matters that were the subject of the claim under review.

Such a determination shall be final and not subject to judicial review." (*Id.*)

The defendant contends that the plaintiff wrongfully challenges the Special Master's determination by bringing the instant action. Contrary to the defendant's contention, the Act only addresses the special master's determination regarding eligibility of the claimant and the amount of compensation to be awarded on behalf of the claimant. As the United States Attorney General has stated:

"Congress did not, however, address who could ultimately receive compensation. Indeed, the 120-day statutory deadline for adjudicating claims on the Fund could in many instances preclude the Special Master from fairly determining how best to disburse awards among family members. Because state laws routinely serve that type of function, it makes the most sense that they generally provide the bases for distribution." (67 Fed Reg 11233, 11243 [2002].)

Thus, the special master disburses the full amount of the award to the personal representative, who, in turn, is charged with distributing the award to beneficiaries in a manner consistent with the law of the decedent's domicile (*see* 28 CFR 104.52).

In light of the above scheme, the plan of distribution is devised by the personal representative, not the special master. While the special master has the discretion to direct the personal representatives to distribute some portion of the award to family members who are not contemplated to be appropriately compensated, the special master is not obligated to do so (*see* 28 CFR 104.52). Accordingly, the Act and the regulations do not bar an action, like the instant one, when the plaintiff disputes only the personal representative's distribution plan. Under these circumstances, the plaintiff is not challenging any determination made by the special master.

Indeed, the Fund's regulations contemplate that state courts should preside over disputes regarding the personal representative's plan of distribution. For instance, in determining the final amount of the award, the special master "may designate the portions or percentages of the final award that are attributable to economic loss and non-economic loss, respectively, and may provide such other information as appropriate to provide adequate guidance for a court of competent jurisdiction and a personal representative" (28 CFR 104.33 [g]).

Since the plaintiff does not challenge the Special Master's determination regarding eligibility and amount, and only disputes her absence from the personal representative's plan of distribution, her claims are not barred by the Act. Therefore, that branch of the motion which was pursuant to CPLR 3211 (a) (7) to dismiss the complaint was properly denied, and the order is affirmed.

KRAUSMAN, LUCIANO and SPOLZINO, JJ., concur.

Ordered that the order is affirmed, with costs.