OPINION OF THE COURT
John M. Leventhal, J.
This is a motion by the court evaluator,[1] made in the context *895 of a guardianship proceeding under article 81 of the Mental Hygiene Law, to compel the spouse of an incapacitated person (IP) to transfer back funds to the incapacitated person. In deciding this motion, the court has considered the order to show cause and affirmation dated June 22, 2007.
Issue Presented
The issue presented is whether the court, after approving a transfer of an incapacitated person’s funds to her spouse for Medicaid planning purposes, can now direct the transfer back of these funds when the spouse has failed to act as promised. Stated another way, can the court deem the funds transferred from a guardian to a spouse for Medicaid planning a constructive trust for the benefit of the IP? This is a question of first impression in New York.
Background
On May 4, 2007, this court found by clear and convincing evidence that the respondent “Jane Doe” (hereinafter incapacitated person or IP) was in need of a guardian of both the person and property under article 81 of the Mental Hygiene Law. This court concluded that the ip who was and currently is in the care of New York Methodist Hospital, suffers from mental and physical impairments (including dementia, Parkinson’s disease, and stage four breast cancer), lacks the ability to care for herself and handle her own finances and should be transferred from the hospital to a nursing home, preferably one close to the IP’s spouse. Further, because the IP requires one-to-one nursing attention, any nursing home facility to which she will be placed would require the same care. Such care is not covered by Medicaid and must be privately financed. Accordingly, this court granted the interim guardian, inter alia, the power to transfer the IP’s assets — then held in joint bank accounts with the IP’s spouse “John Doe” (hereafter spouse or IP’s spouse) — to the IP’s spouse’s name only in order to effectuate Medicaid planning and to permit the IP’s spouse to privately finance the one-to-one care the IP requires. The IP’s spouse was present at the guardianship hearing, verbally assented to the proposed plan, and agreed to do what was in the IP’s best medical interest.
Although the IP’s assets have been transferred to her spouse’s name, the IP’s spouse either no longer comprehends the plan he previously assented to or is not willing to follow through as promised. The spouse’s judgment appears to be waning with *896 time. Consequently, the IP remains in the hospital where she has been since February 2007. The court evaluator seeks a transfer back of the IP’s assets from the IP’s spouse to finance her placement into a nursing home.
Holding
In Matter of Shah (Helen Hayes Hosp.) (95 NY2d 148 [2000]), the New York Court of Appeals upheld the permissibility of a Mental Hygiene Law article 81 guardian to transfer an incapacitated person’s property to his or her spouse for Medicaid planning purposes.* [2] Therefore, this case posits whether a court can deem the funds of a guardian-to-spouse transfer a constructive trust in favor of an IP when the funds were transferred in reliance that they be used for the IP’s medical needs, but subsequently have not been so employed. For the reasons stated below, this court maintains that it can.
Discussion
A constructive trust is an equitable remedy “erected whenever necessary to satisfy the demands of justice” (Latham v Father Divine, 299 NY 22, 27 [1949]; see also Beatty v Guggenheim Exploration Co., 225 NY 380 [1919, Cardozo, J.]), and may be imposed “ ‘[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest.’ ” (Sharp v Kosmalski, 40 NY2d 119, 121 [1976], quoting Beatty, 225 NY at 386.) Specifically, New York courts cite four elements of a constructive trust: (1) a confidential or fiduciary relationship; (2) a promise; (3) a transfer in reliance of such promise; and (4) unjust enrichment (Sharp, 40 NY2d at 121).
These elements, however, “should be applied flexibly.” (Cruz v McAneney, 31 AD3d 54, 59 [2006]; see also Simonds v Si *897 monds, 45 NY2d 233, 241 [1978] [explaining that the Sharp elements are merely “factors” to be considered by a court and that constructive trust doctrine is “not rigidly limited”].) Indeed, an express written promise is not required for imposition of a constructive trust; rather, courts have imposed constructive trusts in light of oral promises (see, e.g., McGrath v Hilding, 41 NY2d 625 [1977]), and have even found promises implied in law (Sharp, 40 NY2d 119, 122 [1976], citing Wood v Duff-Gordon, 222 NY 88 [1917, Cardozo, J.]; see also Sinclair v Purdy, 235 NY 245, 254 [1923, Cardozo, J.]).
Principally, the underlying purpose of a constructive trust is to prevent a transferee’s unjust enrichment. (Sharp, 40 NY2d at 123; Beatty, 225 NY 380 [1919].) Unjust enrichment results when “it is against equity and good conscience to permit [a transferee] to retain what is sought to be recovered.”[3] ****8 (Paramount Film Distrib. Corp. v State of New York, 30 NY2d 415, 421 [1972].) Notably, unjust enrichment does not require a wrongful act by the one enriched (Simonds, 45 NY2d at 241), as even innocent parties may be unjustly enriched. (Id.)
Here, all four elements of a constructive trust are present. Further, the IP’s spouse would be unjustly enriched if he were permitted to retain the transferred funds previously marked for the IP’s medical needs. First, in New York, spousal relationships are presumed “confidential.” (See, e.g., Janke v Janke, 47 AD2d 445 [4th Dept 1975], affd 39 NY2d 786 [1976].) Second, the IP’s spouse verbally assented to the plan to transfer the IP’s assets to his name solely and agreed to finance the IP’s discharge from the hospital and transfer to a nursing home. Next, the IP’s interim guardian, acting on behalf of the IP and relying on the verbal in-court representation - of the IP’s spouse, transferred the IP’s assets over to the IP’s spouse’s name only. Finally, it would be against basic principles of equity and fairness if the IP’s spouse were to be allowed to retain the IP’s transferred assets without financing the IP’s medical needs.
*898 Conclusion
This court finds that the funds transferred from the IP to the IP’s spouse for the IP’s medical needs constitute a constructive trust.
Accordingly, it is hereby ordered that Citibank, Park Slope Financial Center, is directed to transfer $60,000 from the IP’s spouse to the guardian to be placed in a guardianship account.

. The court evaluator making this application as the interim guardian is not an attorney. The interim guardian brought this situation to the court’s attention.

. Hence, a guardian’s power to “make gifts” (Mental Hygiene Law § 81.21 [a] [1]) coupled with relevant state and federal provisions regarding medical assistance eligibility “allows an institutionalized spouse, through guardianship authorization, to transfer all of that spouse’s assets to a community spouse” (Shah, 95 NY2d at 161; see also Matter of John XX., 226 AD2d 79, 84 [1996], lv denied 89 NY2d 814 [1997] [“guardians have the authority to effect transfers of assets for the purpose of rendering incapacitated persons Medicaid eligible” (internal citations omitted)]; see also Mental Hygiene Law § 81.21 [e] [2] [a court, upon making a record of appropriate findings, may grant a property management guardian’s application for relief, if satisfied by clear and convincing evidence that “a competent, reasonable individual in the position of the incapacitated person would be likely to perform the (requested) act or acts under the same circumstances”]).

. Constructive trusts have been imposed in the following situations: (1) over life insurance proceeds received by the second spouse and her daughter where the decedent had promised to maintain life insurance for the first spouse (the Simonds case); (2) over a farm transferred to a plaintiffs paramour on an implied promise that the plaintiff could continue to reside on and operate the farm (the Sharp case); (3) over an increased portion of a September 11, 2001 federal fund award issued to decedent’s brother recognizing the loss of plaintiffs lifetime domestic partner (the Cruz case); and over property transferred to a son, son-in-law, and their limited liability company as security for payment of an annuity to the mother (Nastasi v Nastasi, 26 AD3d 32 [2005]).