171 P.3d 309 (2007)
2007-NMCA-138
Joshua MARCHAND, Petitioner-Appellant,
v.
Rebecca L. MARCHAND, Individually and as Personal Representative of the Estate of Alfred G. Marchand, Respondent-Appellee.
No. 26,558.
Court of Appeals of New Mexico.
June 27, 2007.
Certiorari Granted October 15, 2007.
*310 Steven K. Sanders & Associates, LLC, Steven K. Sanders, Albuquerque, NM, for Appellant.
Stevan J. Schoen, LLC, Stevan J. Schoen, Placitas, NM, for Appellee.
Certiorari Granted, No. 30,608, October 15, 2007.

OPINION
KENNEDY, Judge.
{1} Plaintiff Joshua Marchand (Joshua) appeals from the district court's summary judgment order. Joshua's issues on appeal involve the proper distribution of an award from the September 11th Victim Compensation Fund of 2001 (the Fund), which was awarded after his father, Alfred G. Marchand (Alfred), died on September 11, 2001. The Special Master, appointed by the United States Attorney General to oversee the Fund, determined a final award amount which was to be distributed, in part, to Joshua, to his stepmother, Rebecca Marchand (Rebecca), and to her son Trae Hale (Trae) in accordance with New Mexico intestate succession laws and wrongful death laws. Joshua argues that the district court erred in its distribution of the award from the Fund because the award was not distributed in accordance with New Mexico intestate succession laws and wrongful death laws. Specifically, Joshua is requesting that this Court order that he be awarded the entire economic portion of the Fund awarded by the district court to Rebecca, because after collateral offsets are taken into account, the entire amount is his legal and rightful share of the proceeds.
{2} We affirm the summary judgment order on two of the three issues. We hold that the district court did not err in awarding the two $100,000 non-economic loss awards to Rebecca and Trae. We further hold that the district court did not err in dividing the $250,000 non-economic loss award to the Estate between Joshua and Rebecca, nor did it err in dismissing the other claims raised against Rebecca for fraud, improper accounting, and malfeasance. However, for the reasons stated below, we hold that the district court erred in awarding the balance of the final award to Rebecca, and we remand for further proceedings on that issue.
FACTUAL AND PROCEDURAL BACKGROUND
{3} Alfred was a flight attendant on United Airlines Flight 175, which crashed into the World Trade Center on September 11, 2001. Alfred was survived by his widow Rebecca, his son, Joshua, and his stepson, Trae. Alfred died intestate, leaving no Last Will and Testament. Alfred's Estate (the Estate) was probated in the Probate Court of Otero County, on the application of Rebecca, who was appointed Personal Representative of the Estate on September 17, 2001. An estate inventory was filed with the Probate Court. A Final Account and Report was also filed with the Probate Court. After a hearing, the probate of the Estate was closed and Rebecca was discharged as Personal Representative by order of the Probate Court on December 5, 2003.
{4} On November 28, 2003, while the Estate was still in probate, Rebecca filed a claim with the Fund as Personal Representative of the Estate, on behalf of herself and all of the heirs and dependents of Alfred. Rebecca also retained a law firm in New York City with expertise in preparation and litigation of compensation claims filed with the Fund. Rebecca personally prepared documents required to process a claim and *311 worked with an economist who prepared the "Economic Loss Award Analysis Utilizing Special Master's Methodology for Mr. Alfred Marchand" as evidence of Alfred's economic losses. On April 29, 2004, Rebecca traveled to New York to testify at a hearing before the Special Master, who requested evidence to be presented in person to corroborate the documents already in evidence. As part of the claim for compensation in Section IIj of the Fund compensation application, Rebecca was required to submit to the Special Master a plan for distribution of any award received from the Fund. Allegedly, Joshua did not participate in the preparation or presentation of the claim, although Rebecca repeatedly requested that he do so.
{5} The record indicates that although Rebecca submitted a distribution plan during the claims process, the plan was not approved by the Special Master. On June 24, 2004, the Special Master sent a letter to Rebecca notifying her that a final award determination had been made. The letter contained no distribution plan and stated that the award would be paid to Rebecca, as the "Personal Representative, who is legally obligated to distribute the award in accordance with the laws of the decedent's domicile" and that the distribution must be based on "either an agreement of all potential beneficiaries" or at the "direction of a court of competent jurisdiction in accordance with the law of the decedent's domicile." On June 28, 2004, the Special Master sent a second letter to Rebecca providing her with specific information about the $769,971.88 final award described therein and the time for payment of the award.
{6} On July 19, 2004, Joshua filed a Verified Complaint for Temporary Restraining Order, Injunctive Relief, Declaratory Relief, Accounting, and Damages against Rebecca, both individually and as Personal Representative of the Estate. Joshua alleged that during the probate of the Estate, Rebecca breached her fiduciary duties and took separate property belonging to Alfred prior to their marriage, including a home owned by Alfred, giving no separate property belonging to Alfred to Joshua. He further alleged that Rebecca was about to receive, as the purported Personal Representative of the Estate, an additional payment of $769,971.88 from the Fund, and that Rebecca proposed to take $769,971.88 and distribute only $70,000 to Joshua, retaining the remainder for herself and her son Trae.
{7} Joshua also filed a motion for temporary restraining order on July 19, 2004, arguing that immediate and irreparable injury, loss, or damage would result to Joshua because he just received verbal notice that the funds from the final award would be distributed to Rebecca on July 19, 2004, if Joshua did not agree to a settlement by July 19th and a release of any claims to the Fund award. The district court issued a temporary restraining order on July 19, 2004, ordering Rebecca to be enjoined and restrained from distributing any money from the Fund and it ordered her to deposit the same into the Court registry.
{8} On July 27, 2004, Rebecca responded to Joshua's complaint that she is the surviving widow of Alfred. She further stated that the federal government, pursuant to the Air Transportation Safety and System Stabilization Act (Air Stabilization Act) 49 U.S.C.A. § 40101 (2001), established an administrative process for the determination of claims resulting from the September 11, 2001, terrorist attack. Rebecca contended that under federal law, approval of the award by the Special Master was final and not subject to judicial review, see Air Stabilization Act § 405(b)(3), 49 U.S.C.A. 40101, and any review of the award is prohibited by federal law. Eventually, the parties stipulated that the probate be removed to the district court, and that any payments received from the Fund be administered by Rebecca as Personal Representative in a supervised administration, and that any payments be held in an interest bearing account.
{9} On July 27, 2004, Rebecca filed a motion for subsequent administration in the probate court, which stated that she was the duly qualified Personal Representative of the Estate until it was settled by the probate court on December 20, 2003. It further stated that other property had been discovered since the settlement of the Estate because the Estate was eligible for a distribution of *312 funds as a final award from the Fund. Therefore, the motion stated that reappointment of Rebecca was necessary for the administration of the subsequently discovered property of the award from the Fund. The probate court granted the motion for subsequent administration.
{10} Litigation ensued, and Joshua moved for summary judgment on May 18, 2005, arguing that there were two issues in the lawsuit: the calculation and distribution of the award from the Fund and misappropriation by Rebecca as Personal Representative of the Estate. He argued that according to the laws of New Mexico, the award of $1,018,984.94 from the Fund should be distributed to him. Joshua also contended that the misappropriation issue should be decided at trial. Rebecca responded to Joshua's motion for summary judgment stating that the issues raised by the motion for summary judgment have already been adjudicated in favor of Rebecca in a decision rendered on June 28, 2004, by the Special Master.
{11} On July 12, 2005, Rebecca also moved for summary judgment arguing that, with regard to the misappropriation issue, the Estate was closed on December 5, 2004, and no appeal was taken from that order, and Joshua cannot pursue an appeal or new action based on the December 5th order. Rebecca further argued that concerning Joshua's claim that he was entitled to most or all of the award from the Fund, Joshua did not file a claim with the Fund, and therefore received no award from the Fund. Therefore, because Joshua did not file his claim in a timely and proper manner, Rebecca argued that summary judgment should be entered on her behalf, and that Joshua's July 19, 2004, motion for a restraining order on distribution of the Fund award should be dismissed.
{12} Based on the cross-motions for summary judgment, the district court found that no genuine issues of material fact existed and that the case could be decided as a matter of law. The district court also made the following findings: (1) the final award arising out of the claim from the Fund was $769,971.88, (2) the collateral offsets deducted from the total damages by the Special Master to arrive at the final award are not subject to review or reallocation, and (3) the $100,000 non-economic damage awards to Rebecca and Trae as spouse and dependent child are part of the final award, as directed by the Special Master, and are not subject to review or reallocation by the court. The court held the following: (1) the collateral offsets deducted from the total damages by the Special Master is consistent with the apparent Congressional intent that they be offset against general economic damages; (2) the remaining amount of the final award, $769,971.88, was awarded by the Special Master as economic damages which are community property under NMSA 1978, § 45-2-102 (1975) and pass entirely to Rebecca; (3) the $250,000 general non-economic damage award is part of a final award which was not allocated as directed by the Special Master among the claimants and is separate property of Alfred; and (4) under Section 45-2-102, Joshua is entitled to 3/4 of this amount ($187,500) and Rebecca is entitled to 1/4 of this amount ($62,500). After the calculation of taxes, costs, and attorney fees, the district court ordered that Joshua be awarded $98,750.00 plus a pro-rata share of interest. The district court ordered that all other claims be denied, and all other requests for summary judgment inconsistent with his findings be denied. Joshua appeals from this order. Other additional, pertinent facts will be provided throughout the opinion as needed.
DISCUSSION
1. Standard of Review
{13} A district court's grant of summary judgment is reviewed de novo, and is only appropriate "where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." Self v. United Parcel Serv., Inc., 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. "[W]e view the facts in a light most favorable to the party opposing the motion [for summary judgment] and draw all reasonable inferences in support of a trial on the merits[.]" Handmaker v. Henney, 1999-NMSC-043, ¶ 18, 128 N.M. 328, 992 P.2d 879.
2. The Creation and Implementation of the Fund
{14} In order to compensate the victims and their families of the September 11, 2001, *313 tragedy, President Bush signed the Air Stabilization Act into law. Kenneth Feinberg, Esq., was appointed as the Special Master charged with the duty of administering the Fund. The rules and regulations of the Fund, codified at 28 C.F.R. § 104 (2002), provide, in part, that by electing to file a claim with the Fund, a claimant waives all rights to bring a civil action regarding the events of September 11th, except to recover collateral source obligations (i.e., life insurance, pension funds) or to sue knowing participants in the hijacking conspiracy. See 28 C.F.R. § 104.61 (explaining the limitations on civil actions). The rules further provide that the claimant must be a victim or the personal representative "of those who were killed as a result of the crashes." See 28 C.F.R. § 104.1. The rules also state that the Special Master shall review submitted claims according to three factors: harm to the claimant, facts of the claim, and the individual circumstances of the claimant. See Air Stabilization Act § 405(b)(1), 49 U.S.C.A. 40101. The Special Master's determination is final and not subject to judicial review. See id. § 405(b)(3).
{15} The Fund provides that only one personal representative shall be appointed for the decedent. See 28 C.F.R. § 104.4. Pursuant to 28 C.F.R. § 104.52, "[t]he Personal Representative shall distribute the award in a manner consistent with the law of the decedent's domicile or any applicable rulings made by a court of competent jurisdiction." Further, the regulations require that the personal representative shall be either the executor or administrator of the decedent's estate, or the first person in the line of succession under the intestacy laws of the decedent's domicile. 28 C.F.R. § 104.4(a)(2).
{16} The regulations further require that before any funds are distributed, the personal representative must submit a distribution plan to the Special Master of the Fund for approval. See 28 C.F.R. § 104.52. The regulations also provide that should the Special Master find that the distribution plan does not adequately compensate individuals provided for in decedent's will or under applicable state intestacy laws, the Special Master may direct the personal representative to distribute funds to "such spouse, children, or other relatives." Id.
{17} The Fund allocated final awards based on economic and non-economic losses to the decedent's estates. According to 28 C.F.R. § 104.43 (providing determinations of presumed economic loss for decedents), Congress determined that the Special Master shall consider sums corresponding to loss of earnings or other benefits related to employment and medical expense loss, replacement services loss, loss due to death/burial costs, and loss of business or employment opportunities. According to the regulations, "economic loss" means any pecuniary loss resulting from harm (including the loss of earnings or other benefits related to employment, medical expense loss, replacement services loss, loss due to death, burial costs, and loss of business or employment opportunities) to the extent recovery for such loss is allowed under applicable State law. See id.; Air Stabilization Act § 402(7), 49 U.S.C.A. 40101. Additionally, 28 C.F.R. § 104.44 focuses on the determination of presumed non-economic losses for decedents. Non-economic losses means losses for physical and emotional pain, suffering, inconvenience, physical impairment, mental anguish, disfigurement, loss of enjoyment of life, loss of society and companionship, loss of consortium (other than loss of domestic service), hedonic damages, injury to reputation, and all other non-pecuniary losses of any kind or nature. Air Stabilization Act § 402(7), 49 U.S.C.A. 40101. "The presumed non-economic losses for decedents shall be $250,000 plus an additional $100,000 for the spouse and each dependent of the deceased victim." 28 C.F.R. § 104.44. "Such presumed losses include a non-economic component of replacement services loss." Id. Finally, after a final award is determined, Congress contemplated the distribution of the economic and non-economic losses, and 28 C.F.R. § 104.52 controls the distribution of the award to a decedent's beneficiaries. Section 104.52 states that the personal representative shall distribute the award "in a manner consistent with the law of the decedent's domicile or any applicable rulings made by a court of competent jurisdiction." Id.
*314 {18} Applying the regulations, along with the laws of the decedent's domicile, in this case, the Special Master arrived at a final award determination for Rebecca's claim. The wrongful death statute in New Mexico provides for the distribution of proceeds as follows: "[I]f there is a surviving spouse and a child or grandchild, then one-half to the surviving spouse and the remaining one-half to the children and grandchildren, the grandchildren taking by right of representation[.]" NMSA 1978, § 41-2-3(B) (2006). Section 45-2-102(A), New Mexico's intestate succession law, provides as follows:
A. as to separate property:
(1) if there is no surviving issue of the decedent, the entire intestate estate; or
(2) if there is surviving issue of the decedent, one-fourth of the intestate estate; and
B. as to community property, the one-half of the community property as to which the decedent could have exercised the power of testamentary disposition passes to the surviving spouse.
The Special Master's letter to Rebecca notifying her that a final award determination had been made noted that awards from the Fund included the three general components discussed above:
1) compensation for economic loss to be generally distributed according to the wrongful death law of the decedent's domicile, 2) $250,000 for non-economic harm distributed in accordance with a will, or if there is no will, the intestate law of the decedent's domicile, and 3) a $100,000 non-economic award for each spouse and/or dependent.
The letter further stated that the Fund must also deduct "collateral sources" from the award, which includes life insurance, pension funds, death benefit payments, and payments by Federal, State, or local governments related to the terrorist-related aircraft crashes of September 11, 2001. In this case, the aggregate final award was $769,971.88. The final award amount is undisputed.
3. Propriety of this Appeal
{19} As a threshold issue, we address Rebecca's contention that the Special Master's award was based on the approved plan of distribution and therefore the award is final, binding, and not subject to judicial review as set forth in the Air Stabilization Act. Joshua contends that this lawsuit is proper because he is not challenging the Special Master's final award. Rather, he is challenging the distribution of the award. We agree with Joshua's argument, and determine that contrary to Rebecca's contention, the Act does not bar this lawsuit.
{20} Section 405(b)(3) of the Air Stabilization Act provides:
Not later than 120 days after that date on which a claim is filed . . . the Special Master shall complete a review, make a determination, and provide written notice to the claimant, with respect to the matters that were the subject of the claim under review. Such a determination shall be final and not subject to judicial review.
Air Stabilization Act § 405(b)(3), 49 U.S.C.A. 40101. Although Rebecca contends that Section 405(b)(3) bars this lawsuit, Section 405(b)(3) is unavailing to Rebecca under the facts presented. This case involves the determination of the proper distribution of the award under state law, and not the Special Master's award determination itself. Such a case is expressly anticipated by the Fund's guidelines, and in the language of the Special Master's final award letter to Rebecca. See 28 C.F.R. §§ 104.33(g), 104.52. We note that state courts have exercised jurisdiction in similar matters relating to the Fund. For example, the New York Appellate Division recently affirmed a denial of a motion to dismiss in a dispute over Fund award distribution. See Cruz v. McAneney, 31 A.D.3d 54, 816 N.Y.S.2d 486, 489 (2006). As no party has challenged the rules of the Special Master or his calculation of the total award, this appeal is properly before this Court, and we can discuss the distribution of the final award.
4. Distribution of the Fund
{21} With regard to the distribution of the award, we hold that the district court did not err in finding that the $100,000 non-economic damage awards to both Rebecca and Trae were final as directed by the Special Master *315 and not subject to review or reallocation. The Special Master's June 28, 2004, letter to Rebecca directs separate awards of $100,000 to Rebecca as Alfred's spouse and to Trae as Alfred's dependent. This award is expressly contemplated in 28 C.F.R. § 104.44, which directs to a spouse and to each dependent the amount of $100,000 as compensation for presumed non-economic loss of replacement services. Unlike other components of loss, the Fund and its attendant regulations did not provide that the $100,000 non-economic awards would be distributed according to the state law of a decedent's domicile. See id. We therefore affirm the district court's distribution of this component of the final award.
{22} With regard to the $250,000 award for the non-economic loss to the Estate, we hold that the district court did not err in finding that Joshua is entitled to 3/4 of the award ($187,500) and Rebecca is entitled to 1/4 of the award ($62,500). Rebecca agrees that summary judgment was proper as to the $250,000 non-economic damage award, as the award was not specifically allocated as directed by the Special Master. According to 28 C.F.R. § 104.44, the presumed non-economic losses for decedents is $250,000, and the Special Master directed that this award be distributed in accordance with a will, or if there is no will, the intestate law of the decedent's domicile.
{23} In this case, the $250,000 non-economic award is the separate property of the decedent, Alfred. Therefore, pursuant to Section 45-2-102(A), the district court correctly held that as a matter of law, Joshua is entitled to three-fourths of the award and Rebecca is entitled to one-fourth of the award.
{24} Finally, with regard to the economic loss component of the final award, we hold that the district court applied the wrong principle of law when it distributed the economic loss portion of the award ($769,971.88 less $450,000 for the distribution of non-economic loss awards) entirely to Rebecca as her share of community property. The Special Master's June 24, 2004, letter states that the economic loss component is to be generally distributed according to the wrongful death law of the decedent's domicile. In this case, the district court disregarded the explicit instructions of the Special Master and found that the economic award was community property and did not apply our wrongful death laws when it distributed the entire award to Rebecca. We hold that the economic loss portion of the award should be distributed to both Rebecca and Joshua according to Section 41-2-3(B).
{25} Joshua contends that he is entitled to receive the entire $769,971.88, or perhaps more, because collateral offsets were improperly applied to his share of the final award. Rebecca contends that she should receive the entire economic loss award because she was the only person who suffered economic loss and Joshua was not awarded any of the economic loss award by the Special Master. We are not persuaded by either party's arguments.
{26} With regard to Joshua's contentions, he misconstrues the Special Master's directions that compensation for economic loss is to be generally distributed according to the wrongful death laws of the decedent's domicile and misinterprets the law. First, as stated above, our wrongful death law directs that the economic loss award be split between Rebecca and Joshua. Second, with regard to Joshua's contention that the collateral offsets were improperly applied in this case, we note that Congress bestowed great discretion on the Special Master to determine appropriate offsets, and we cannot say that based on its directives, the Special Master erred in this case. See, e.g., 28 C.F.R. § 104.47(a) (providing that when determining the appropriate collateral offsets the Special Master may employ an appropriate methodology).
{27} The Special Master's final award letter to Rebecca states that "[g]enerally, collateral offsets should first be applied to the share of the individual who received the benefit." It further states that pursuant to court order or an arrangement by the parties, a reallocation of collateral offsets may be appropriate under certain circumstances. We do not read this language as directing the trial court to reallocate the offsets, but *316 rather the language provides information as to the origin of the offsets and how they were calculated in coming to the final award amount. In this case, the district court found that collateral offsets deducted from the total damages by the Special Master to arrive at the final award are not subject to review or reallocation, and the district court found that the deduction was consistent with the apparent Congressional intent that deductions be offset against general economic damages. Based on the discretion given to the Special Master and the state courts by the federal government, we cannot say that the district court erred as a matter of law with regard to collateral offsets.
{28} With regard to Rebecca's argument that she should receive the entire economic award, we note that she also misconstrues the Special Master's directions that economic losses be generally distributed according to the wrongful death laws. Although Rebecca contends that she is the only claimant that is entitled to the economic loss portion of the final award as set forth in the proposed distribution plan, the parties acknowledge that the Special Master did not approve the distribution plan. Further, to award the economic loss award according to our community property laws would completely ignore the Special Master's directive. As the Special Master's letters to Rebecca indicated that the award from the Fund remained undistributed and should be distributed according to New Mexico law, we hold that the district court did not apply the appropriate legal principles to the distribution of the economic loss award. Therefore, we remand this case to the district court to distribute the economic damages to Joshua and Rebecca pursuant to Section 41-2-3(B).
5. Claims Against Rebecca for Fraud, Malfeasance, or Accounting
{29} Joshua raised claims against Rebecca as Personal Representative of the Estate or individually, for fraud, malfeasance, or improper accounting in his July 19, 2004, complaint. In essence, he argued that Rebecca did not follow all of the procedures for eligible claimants of the Fund or the procedures set forth in the New Mexico Probate Code. Although the district court did not make any specific findings regarding Joshua's claims against Rebecca in its summary judgment order, it did order that all the claims be denied. We hold that the district court did not err.
{30} On appeal, Joshua contends that contrary to Rebecca's arguments before the district court, the claims for fraud, misrepresentation, and inadequate disclosure are not barred by the statute of limitations even if any other rights are barred. We are not persuaded by Joshua's arguments. First, the record convinces us that any claim arising from the probate court's December 5, 2003, Order of Complete Settlement and Discharge of the Personal Representative is an untimely and impermissible collateral attack of a final order. Joshua did not appeal the Order of Complete Settlement within thirty days as provided by our rules of appellate procedure. See Rule 12-201(A)(2) NMRA. Furthermore, Joshua did not pursue a claim for breach of fiduciary duty against Rebecca as Personal Representative with regard to the probated estate before the award from the Fund was distributed, as set forth in NMSA 1978, § 45-3-1005 (1975) (ordinarily providing a six-month statute of limitations after filing the closing statement). Rather, Joshua received full payment of his distribution from the probate estate on January 13, 2003. Cf. Courtney v. Nathanson, 112 N.M. 524, 525, 817 P.2d 258, 259 (Ct.App.1991) ("The general rule is that a party waives her right to appeal when she accepts the benefit of a judgment."). Joshua also received an accounting showing the calculation for distribution of the Estate. Moreover, Rebecca was duly appointed Personal Representative of the Estate, and Joshua did not contest the appointment.
{31} To the extent that Joshua contends that Rebecca improperly or fraudulently took money received from the Fund, which, if proven, would lift the six-month statute of limitations under Section 45-3-1005, this contention is not supported by the record. The record reveals that only one claimant was permitted to file a claim for compensation from the Fund. Rebecca filed a claim and gave notice to all heirs and potential beneficiaries *317 of Alfred's estate. Joshua was notified of the claim and was asked to participate in the prosecution of the claim. For whatever reasons, Joshua chose not to participate in or contest the claim before the Special Master.
{32} The record further reflects that after payment from the Fund was received by Rebecca, she and Joshua agreed by stipulated order to keep the award in an interest-bearing bank account until further order of the district court and upon resolution of this appeal. There is no evidence in the record, nor does Joshua allege, that any money received from the Fund was improperly or fraudulently misappropriated by Rebecca or that there has been inadequate disclosure or misrepresentation with regard to payments from the Fund. Therefore, as there is no basis for any claims against Rebecca either individually or as Personal Representative of the Estate, we hold that the district court did not err in denying all claims against Rebecca for fraud, malfeasance, or accounting.
CONCLUSION
{33} For the foregoing reasons, we affirm the district court's distribution of the Fund with regard to all of the non-economic damage awards. We reverse the district court's distribution of the economic damage award to Rebecca, and remand to the district court so that it can distribute the award according to New Mexico wrongful death law. We affirm the district court's denial of all claims against Rebecca for fraud, malfeasance, or accounting.
{34} IT IS SO ORDERED.
WE CONCUR: CELIA FOY CASTILLO and MICHAEL E. VIGIL, Judges.