PATHE EXCHANGE, INC., Respondent, *v.* BRAY PICTURES COR-
PORATION and Others, Appellants, Impleaded with CINEMA
FINANCE CORPORATION, Defendant.

First Department, January 30, 1931.

*Hiram Thomas* of counsel [*Hugh S. Williamson* with him on the brief; *Breed, Abbott & Morgan,* attorneys], for the appellants.

*Howard Thayer Kingsbury* of counsel [*Walter R. Barry* with him on the brief; *Coudert Brothers,* attorneys], for the respondent.

O'MALLEY, J.   In this action in replevin plaintiff seeks to recover possession of a motion picture film (negative and positives), together with $25,000 damages for the detention of the same or, in the alternative, if possession be not delivered, the sum of $137,000, the alleged value of said property.   Plaintiff's right to possession is wholly predicated, so far as this appeal is concerned, upon an alleged right of subrogation.

While this is a motion made on the pleadings any technical issues that might be raised thereby seem not to be relied upon by any of the parties, and from the pleadings, the judgment roll of another action filed in the office of the clerk of the court, of which judicial notice may be taken, and which has been stipulated by the parties as part of the record, and from the briefs and oral argument of the respective counsel, the essential ultimate facts are not in dispute.

By contracts hereinafter more specifically referred to, the defendant Bray Pictures Corporation, hereinafter designated Bray, was to produce a certain motion picture.   The plaintiff, hereinafter designated Pathe, was to exploit and distribute the picture.   The defendant Cinema Finance Corporation, hereinafter designated Cinema, financed the picture in part by advancing certain moneys to Bray, taking back as security all of Bray's rights under its contract with Pathe.

When Bray did not meet payment of the loans, Cinema brought action against Pathe under the terms of the latter's contract with Bray.   Pathe paid the judgment so recovered.   The payment of this judgment, applied by Cinema on the indebtedness to it of Bray, is the basis of plaintiff's claim of subrogation and right to the negative and positive films.

As alleged in the complaint, plaintiff claims that " By such payment and satisfaction of said judgment plaintiff became and was subrogated to all the rights assigned by the defendant herein, Bray Pictures Corporation, to said Cinema Finance Corporation, and became entitled to said motion picture and the negative and positive films thereof and to the immediate possession of said films."

Under date of August 12, 1927, Pathe and Bray entered into a contract for the production, distribution and exploitation of the motion picture.   Pathe was given thereby a lien on the negative and a charge upon moneys accruing in Bray's favor, and agreed

to release the picture within three months after delivery, and to exploit and distribute it for a minimum period of two years following such release. This was an exclusive right with privileges of licensing others. It was specifically provided, however, that the negative of the picture delivered to Pathe should be and remain the property of Bray, subject, however, to Pathe's lien and its right to keep and retain the same in its possession, custody and control during the period for which the rights were guaranteed. It was further provided that the positive prints of the picture (to be made from the negative) should be and remain the absolute property of Pathe.

This contract further provided that should Pathe be guilty of any "default * * * unremedied for a period of thirty (30) days after notice in writing of such default" to be given by Bray, the latter would have the right to withhold delivery of the negative until the default had been remedied, or it might at its option terminate the agreement by a ten-day notice to Pathe of its intention so to do. In the event of such termination, Bray was entitled to seize and take all the negatives theretofore furnished by Bray to Pathe.

By further agreement of September 24, 1927, the first agreement was modified in various ways. The production date was postponed to on or about October 15, 1928, and the delivery date to on or about February 1, 1928. Pathe authorized Bray to create a *prior* lien upon the picture and all rights therein as collateral security for money borrowed, and Pathe *guaranteed* to pay Bray, or its "assigns," the cost of production up to $100,000 exclusive of $25,000 to be furnished by Bray if, within eighteen months after release of the picture, its revenues should have been less than such cost. Pathe was then entitled to retain all moneys thereafter accruing in Bray's favor until the sum so retained should amount to a sum equal to the difference between the revenues and the amount advanced.

Following this contract and under date of October 20, 1927, the two first contracts being recited, Bray and Cinema entered into a contract, whereby Cinema agreed to advance $55,000 to Bray, and if the cost of production should exceed $80,000, then to advance some $20,000 more, providing the guaranty of Pathe, as above detailed, should be then in effect.

This contract between Bray and Cinema provided that as security for the repayment of all sums advanced by Cinema, together with interest, Bray assigned, transferred, mortgaged and pledged to Cinema all its right, title and interest in and to all negatives that might be made of the picture, together with the right to possession

thereof, and in and to all positive prints that might be made from such negatives, together with the right of possession, and to all receipts and proceeds arising from the distribution, sale and exhibition of the picture, together with all of Bray's right, title and interest in and to its contract or contracts with Pathe.

It was further specifically provided that should Pathe fail or refuse to accept the negatives and sample print when completed, that Cinema might *in the name of Bray* or otherwise, as it deemed best, commence or prosecute any action or other proceedings appropriate to compel Pathe to accept the picture and to pay any money agreed to be paid by Pathe, or might sue Pathe for damages for such failure or refusal.

On January 13, 1928, the alleged guaranty between Pathe and Bray was increased to $145,000, less $25,000 advanced by Bray, or $120,000 net, and the delivery date of the picture was extended to March 1, 1928. By agreement of even date between Cinema and Bray, the former agreed to increase its advance by the sum of $30,000 in addition to $75,000 already advanced, and consented to the last-mentioned amendment of the agreement between Pathe and Bray. Under date of February 16, 1928, Cinema promised, in view of Pathe's guaranty of the increased amount of $145,000, that it would advance to Bray, in addition to the $105,000 theretofore advanced, the further sum of $15,000 upon the same terms and conditions, and again expressly consented to amendments of the agreements between Bray and Pathe.

The judgment roll in the action brought by Cinema against Pathe shows beyond doubt that Cinema sued as assignee of Bray's rights under its agreements with Pathe, and that the gravamen of the causes of action was Pathe's refusal to accept, exploit or distribute the picture, or to release the same, or to take any steps whatsoever towards realizing any moneys, although the negative of the picture had been produced.

Under such circumstances we are of opinion that in satisfying the judgment so obtained, Pathe was not paying the debt or obligation of Bray to Cinema, but was satisfying merely its own obligation to Bray, which had been assigned by the latter to Cinema. It is true that it guaranteed payment to Bray " or its assigns." This guaranty, however, was not of payment of Bray's obligation to such assignee. It was merely a promise to pay Bray a certain sum. Nor did it guarantee that Bray would pay. The word " guaranteed " was used not in a technical legal sense, but as a synonym of " agrees " or " promises " (*Deeves & Son* v. *Manhattan Life Ins. Co.*, 195 N. Y. 324, 331), and it created a primary and not a secondary liability. (*Clark* v. *Howard*, 150 N. Y. 232;

*Kernochan* v. *Murray,* 111 id. 306, 309; *Jones* v. *Newton,* 79 Hun, 436; affd. on opinion below, 149 N. Y. 596; *Bank of Italy* v. *Merchants National Bank,* 197 App. Div. 150; *Bossert* v. *Striker,* 142 id. 5; *Barber Asphalt Paving Co.* v. *Northern Ohio T. & L. Co.,* 202 Fed. 817.)

Pathe in satisfying the judgment obtained by Cinema against it was paying its own debt, not the obligation of Bray to Cinema as such. The situation is analogous to one where promissory notes made by Pathe to the order of Bray with a separate and distinct consideration, would be assigned to Cinema as collateral security for a loan made by it to Bray. If, after action brought by Cinema, on the notes against Pathe, the latter should pay the same, Cinema, of course, would be compelled to apply the proceeds in satisfaction of Bray's indebtedness to it; but no one could reasonably contend that in paying its notes, Pathe had, legally speaking, discharged a secondary and not a primary liability, and that it had paid a debt of Bray so that it would be entitled to other collateral of Bray, held by Cinema.

Nor could it be seriously contended that subrogation would be proper in the present case had Bray itself, in the first instance, sued Pathe for breach of its contract and after recovering, applied the proceeds of such recovery on its indebtedness to Cinema. Yet practically that is what happened here. The procedure was direct and not circuitous.

Subrogation is an equitable remedy not given to one who merely pays his own debt. (*Schreyer* v. *Saunders,* 39 App. Div. 8; *People ex rel. McMillan* v. *Supervisors, etc.,* 136 N. Y. 281.) It would be inequitable to permit a debtor (Pathe) to acquire equities against his creditor (Bray) through the latter's assignment of rights against such debtor to a third party. Particularly is Pathe's situation not commendable to equitable relief when it is remembered that Pathe is endeavoring to obtain rights against Bray to which it was entitled only upon performance by Pathe of its agreement with Bray. The judgment paid by Pathe was, as already pointed out, predicated upon Pathe's breach of such agreement.

The authority relied upon by Special Term (*Gerseta Corporation* v. *Equitable Trust Co.,* 241 N. Y. 418) is quite dissimilar from the facts under consideration. In the case cited the party obtaining subrogation was a creditor of the party to whose rights it was subrogated. There was had in that case merely an equitable apportionment of collateral as between two creditors of a common debtor. Here, the plaintiff Pathe was a debtor, not a creditor, of the party to whose rights it desires to be subrogated.

It follows, therefore, that the order appealed from should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

DOWLING, P. J., MERRELL, MARTIN and SHERMAN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.