Jetro Holdings, LLC, Plaintiff, I

against
Mastercard International, Inc. and MASTERCARD INCORPORATED, Defendants.


60374/2015

ROPES & GRAY LLP
By: Douglas H. Meal, Esq.
William P. Harrington, Esq., of counsel
Attorneys for Plaintiff
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
GOLENBLOCK EISEMAN ASSOR BELL & PESKOE LLP
By: Martin S. Hyman, Esq.
Attorneys for Defendants
437 Madison Avenue, 35th Floor
New York, New York 10022 


Alan D. Scheinkman, J.

Defendant MasterCard International, Inc. ("Defendant" or "MasterCard") moves, pursuant to CPLR 3211(a)(7) to dismiss the Complaint of Plaintiff Jetro Holdings, LLC ("Plaintiff" or "Jetro") or to strike the Complaint for failure to comply with the pleading requirements of CPLR 3014, or alternatively, requiring Plaintiff to replead. 
FACTUAL AND PROCEDURAL HISTORY
Jetro is a "cash-and-carry" wholesaler of food products, household goods, equipment and supplies for grocery retailers and restaurants under the names Restaurant Depot and Jetro Cash & Carry. Jetro participates in the MasterCard network, enabling Jetro's customers to pay for their purchases using their MasterCard credit cards. PNC Bank ("PNC") is Jetro's acquirer for MasterCard transactions. PNC has a contractual agreement with MasterCard; Jetro has a contractual agreement with PNC.
In both 2011 and 2012, cyber criminals penetrated Jetro's computer network. MasterCard imposed approximately $7 million in fines, assessments, and fees upon PNC as a consequence of these intrusions, the imposition of which was predicated on alleged breaches of data security standards, enforceable against PNC through its agreement with MasterCard. PNC then withheld an equivalent amount of money from monies otherwise due Jetro, pursuant to the Jetro/PNC agreement. Claiming that MasterCard imposed the fines, assessments and fees in violation of the data security standards and the MasterCard/Jetro agreement, Jetro seeks to recover from MasterCard the funds withheld from it. Jetro's primary argument is that, by virtue of PNC's use of funds otherwise belonging to Jetro to pay MasterCard, Jetro should be equitably subrogated to the rights that PNC has to seek recoupment from MasterCard of funds MasterCard wrongfully collected. 
The Court does not agree that the doctrine of equitable subrogation applies. Jetro has no direct contractual relationship with MasterCard and its claimed losses were occasioned by PNC's withholding of funds from Jetro. At bottom, Jetro's inability to seek redress for the withholding of funds by PNC is attributable to Jetro's own agreement, in its contract with PNC, that Jetro would indemnify PNC even for assessments that might violate the data security standards or which are otherwise unlawful. That Jetro bargained away its remedy against PNC does not give it the right to proceed directly against MasterCard. Accordingly, the Court will grant the motion to dismiss.
RELEVANT BACKGROUND
This action was commenced by the filing of a Summons and Complaint on June 16, 2015. The Complaint, insofar as relevant, contains eight causes of action [FN1]
: (a) a First Cause of Action for breach of contract regarding a "2011 Case Management Fee"; (b) a Second Cause of Action for breach of contract concerning the "2011 ADC Assessments"; (c) a Third Cause of Action for breach of the implied covenant of good faith and fair dealing regarding the "2011 ADC Assessments"; (d) a Fourth Cause of action for unjust enrichment concerning the "2011 Case Management Fee" and the "2011 ADC Assessments";(e) a Sixth Cause of Action for breach of [*2]contract concerning the "2012 Case Management Fee"; (f) a Seventh Cause of Action for breach of contract regarding the "2012 ADC Assessments"; (g) an Eighth Cause of Action for breach of the implied covenant of good faith and fair dealing concerning the "2012 ADC Assessments"; and (h) a Ninth Cause of Action for unjust enrichment regarding the "2012 Case Management Fee" and the "2012 ADC Assessments".
THE ALLEGATIONS OF THE COMPLAINT
The allegations of the Complaint are taken as true for purposes of this motion to dismiss. Plaintiff alleges that it accepts MasterCard-branded payment cards for purchases (Complaint at ¶ 8). PNC is a MasterCard member and processes MasterCard transactions at Plaintiff's stores pursuant to a contract between Plaintiff and PNC (the "PNC Agreement") (id.). The Complaint alleges that under the PNC Agreement, PNC agreed to enable and facilitate Plaintiff's participation in the MasterCard network, and Plaintiff agreed to comply with MasterCard's Standards for MasterCard members (the "Standards") and to pay PNC an "interchange fee" equal to a percentage of each MasterCard transaction completed at one of Plaintiff's stores (id. at ¶ 9). PNC keeps a portion of Plaintiff's interchange fees for itself, and pays the rest to MasterCard under PNC's contract with MasterCard (id.). MasterCard, under its agreements with the issuers, pays the rest of the interchange fees to the issuers who issued the accounts used to make the transactions in question (id.).
The Complaint asserts that under the PNC Agreement, Plaintiff agreed to indemnify PNC against certain assessments that MasterCard might impose on PNC under the Standards related to MasterCard transactions at Plaintiff's stores, even in cases where MasterCard violated the Standards or otherwise violated the law by imposing such assessments (id. at ¶ 10). According to the Complaint, the indemnification provision in the PNC Agreement states:
[Plaintiff] agrees to pay [PNC] any fines imposed on [PNC] by any Association resulting from Chargebacks and any other fees or fines imposed by an Association with respect to acts or omissions of [Plaintiff] . . . [Plaintiff] agrees to indemnify and hold [PNC] harmless from and against all losses, liabilities, damages and expenses (including attorneys' fees and collection costs) resulting from any breach of any warranty, covenant or agreement or any misrepresentation by [Plaintiff] under this Agreement, or arising out of any gross negligence or willful misconduct of [Plaintiff] or its employees, in connection with [Plaintiff's] Card transactions or otherwise arising from [Plaintiff's] provision of goods and services to Cardholders . . . Notwithstanding anything in this Agreement to the contrary, [Plaintiff] agrees to indemnify and hold [PNC] harmless from and against all losses, liabilities, damages and expenses (including attorneys' fees and collection costs) resulting from [Plaintiff's] failure to comply with [MasterCard, Visa and other payment card association] Rules, and in particular [MasterCard] data security Rules (id. at ¶ 11).[FN2]

The Complaint alleges that if a MasterCard merchant suffers a data security breach involving cardholder data, the Standards set forth a contractual mechanism for (a) determining whether an account data compromise event ("ADC Event") occurred and whether the merchant (i.e. Plaintiff) and its acquirer (i.e. PNC) bears responsibility; (b) determining the counterfeit fraud losses and expenses that MasterCard issuers incurred as the result of the ADC Event; and (c) MasterCard's collecting the contractually specified portion of those losses from the MasterCard acquirer in question (i.e. PNC) (id. at ¶ 14).
According to the Complaint, intruders attacked Jetro's computer network in 2011, seeking to steal payment card data (id. at ¶ 22). The attackers inserted malware into Jetro's computer system which employed custom technology to acquire account data as it was being processed on Jetro's network (id. at ¶ 25). Jetro asserts that Mastercard determined that this episode constituted an Account Data Compromise Event ("ADC Event") and that PNC was not in compliance with the Standards (id. at ¶ 26, see ¶ 15). Because of this, MasterCard collected from PNC a $50,000 case management fee (the "2011 Case Management Fee") and $3,325,614.15 in account data compromise assessments (the "2011 ADC Assessments") (id. at ¶¶ 26-27). In turn, PNC withheld from Jetro, out of monies otherwise due Jetro, $3,375,614.15, so that PNC could obtain reimbursement in accordance with PNC's agreement with Jetro (id. at ¶ 28). Jetro alleges that MasterCard's imposition of the 2011 Case Management Fee and the 2011 ADC Assessments were in violation of the Standards and are legally unenforceable (id. at ¶¶ 29-43).
The Complaint alleges that Jetro was again the subject of a cyber attack in 2012 (id. at ¶¶ 44-45). This time the attackers inserted malware that employed "packet sniffer" technology custom designed to acquire account data while the data was in transit through Jetro's computer network en route to Jetro's server location (id. at ¶ 45). MasterCard determined that PNC was not compliant with the data standards (id. at ¶47) and collected from PNC a $50,000 case management fee (the "2012 Case Management Fee") and $3,336,276.96 in account data compromise assessments (the "2012 ADC Assessments") (id. at ¶¶ 47-50). It is further alleged that PNC withheld from Plaintiff $3,411,276.96 pursuant to the PNC Agreement, which included the 2012 Case Management Fee, the 2012 ADC Assessments, and a $25,000 Non-Compliance Fine (id. at ¶ 53).[FN3]
Plaintiff alleges that MasterCard's imposition of the 2012 Case Management Fee and the 2012 ADC Assessments were in violation of the Standards and are legally unenforceable (id. at ¶¶ 55-71).
DEFENDANT'S CONTENTIONS IN SUPPORT OF ITS MOTION
In support of its motion, Defendant submits an affirmation from its counsel, Martin S. [*3]Hyman, Esq.[FN4]
, and a memorandum of law.
MasterCard argues that the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing should be dismissed for lack of standing. MasterCard contends that Plaintiff admits it does not have a contract with MasterCard, and thus does not have standing to assert contractual claims directly against MasterCard and that it would be both unprecedented and unwarranted to apply the concept of equitable subrogation here. Doing so would, according to MasterCard, confer upon Plaintiff a license to circumvent its own contract with PNC and sue MasterCard over the terms of a contract to which Plaintiff is not a party and as to which the contracting party, PNC, has not alleged any breach. 
MasterCard also argues that the Third and Eighth Causes of Action for breach of the implied covenant of good faith and fair dealing should be dismissed because Plaintiff has not alleged any implied duty that was breached or how it was breached. Furthermore, MasterCard alternatively contends that even if these causes of action were valid, they are wholly duplicative of the First, Second, Sixth and Seventh Causes of Action for breach of contract, and should be dismissed on that ground. 
MasterCard contends that the Fourth and Ninth Causes of Action for money had and received and unjust enrichment should be dismissed because MasterCard did not receive any money or other benefit from Plaintiff. Rather, MasterCard says it received the 2011 and 2012 Case Management Fees and ADC Assessments directly from PNC pursuant to the contract between those two parties, and PNC made an independent decision to seek indemnity from Plaintiff. Additionally, MasterCard argues that these causes of action that are grounded in principles of quasi-contract should be dismissed because the subject matter of this action is fully covered by contract, which precludes these equitable claims. Specifically, although there is no contract between Plaintiff and MasterCard, Plaintiff's causes of action are entirely governed by contracts, i.e. the Standards between MasterCard and PNC and the PNC Agreement between Plaintiff and PNC.[FN5]

PLAINTIFF'S CONTENTIONS IN OPPOSITION
In opposition, Plaintiff submits an affirmation from its counsel, Megan McEntee, Esq., and a memorandum of law.
Counsel's affirmation annexes copies of the MasterCard Rules dated April 11, 2012, the [*4]MasterCard Security Rules and Procedures dated August 17, 2012, and MasterCard's Account Data Compromise User Guide dated February 25, 2011.[FN6]
Counsel's affirmation also annexes copies of certain case decisions discussed in Plaintiff's memorandum of law.
Plaintiff argues that it has standing to assert its causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. Jetro contends that given that MasterCard dictated many of the terms of the PNC Agreement between Plaintiff and PNC, including a term by which Plaintiff agreed to be bound by the Standards, MasterCard cannot claim to be a "stranger" to the PNC Agreement. Similarly, says Jetro, Plaintiff is not a stranger to the contractual agreement between MasterCard and PNC, because merchants such as Plaintiff are the entire purpose of such license agreements. Plaintiff argues that the Standards specify the content of any contract between an acquiring bank such as PNC and a merchant such as Plaintiff. According to Plaintiff, the Standards mandate that acquirers such as PNC submit to MasterCard their contracts with merchants such as Plaintiff upon request. Plaintiff further contends that because the Standards require that a third party merchant such as Plaintiff comply therewith, and prohibit PNC from including in agreements with merchants any term that conflicts with the Standards, Plaintiff was effectively bound by the very same Standards that are the foundation of the contract between MasterCard and PNC. As such, Plaintiff argues that it has standing to assert its First, Second, Third, Sixth, Seventh and Eighth Causes of Action for breach of contract and breach of the implied covenant of good faith and fair dealing. 
Plaintiff argues that the doctrine of equitable subrogation applies beyond the insurance context to situations like this case, where one party pays another's contractual debt and seeks to recover that payment from the wrongdoer that caused the loss that was indemnified. Plaintiff argues that this doctrine is broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, as long as the payment was made either upon compulsion or for the protection of some interest of the party making the payment. It also contends that MasterCard's argument that Plaintiff is not tantamount to "an innocent insurer" fails for three reasons. First, because any allegation that Plaintiff is not "innocent" is dependent upon factual assertions that either contradict or extend beyond the Complaint's allegations, MasterCard's argument must be rejected at this stage of the litigation. Second, Plaintiff argues that the doctrine of equitable subrogation does not require the party seeking subrogation to be "innocent," and is instead based on a balancing of the equities. Third, Plaintiff contends that MasterCard's argument about an "innocent insurer" is irrelevant because even if Plaintiff was responsible for security deficiencies that led to the data breaches, that does not address the core issue of this litigation which is whether MasterCard properly and lawfully imposed the 2011 and 2012 Case [*5]Management Fees and ADC Assessments. Thus, Plaintiff concludes that it has standing to assert its First, Second, Third, Sixth, Seventh and Eighth Causes of Action for breach of contract and breach of the implied covenant of good faith and fair dealing. 
Plaintiff also argues that the Third and Eighth Causes of Action for breach of the implied covenant of good faith and fair dealing should not be dismissed because these claims are based upon distinct theories from those underlying the causes of action for breach of contract. Plaintiff contends that the implied covenant and fair dealing claims are grounded in the theory that MasterCard's exercise of discretion afforded to it under the Standards in imposing and collecting the 2011 and 2012 Case Management Fees and ADC Assessments was done unfairly and in the absence of good faith, and deprived PNC of the benefits of its contract with MasterCard.
Plaintiff further contends that the Fourth and Ninth Causes of Action for money had and received and unjust enrichment should not be dismissed because Plaintiff need not be in contractual privity with MasterCard to assert these claims. Rather, Plaintiff argues that MasterCard's "interlocking relationships" with acquiring banks such as PNC and merchants such as Plaintiff, as set forth in the Standards, provides an adequate basis for Plaintiff to assert these causes of action. Plaintiff asserts that it and MasterCard are not strangers to one another, and that MasterCard's relationship with PNC exists to facilitate transactions between Plaintiff and MasterCard, and the terms of the PNC Agreement were in fact dictated by MasterCard. Therefore, Plaintiff argues that it is free to allege quasi-contract claims based on the direct harm it has allegedly suffered due to MasterCard's actions. Alternatively, Plaintiff contends that MasterCard's assertion that no direct contract exists between the parties renders meritless MasterCard's argument that a contract precludes quasi-contractual remedies. Thus, Plaintiff argues that its Fourth and Ninth Causes of Action for money had and received and unjust enrichment are not duplicative of any contract claims, and should not be dismissed.
Plaintiff argues that it has met the liberal requirements of CPLR 3014 in that the paragraphs in the Complaint contain, "as far as practicable, a single allegation." Plaintiff contends that the Complaint does not suffer from the type of extreme defect that would require dismissal or repleading, such as when a plaintiff entirely fails to distinguish separate claims. Although Plaintiff concedes that certain paragraphs are lengthy in setting forth the intricate contractual relationships at issue, it contends that the Complaint does not prejudice MasterCard and that MasterCard can furnish an Answer to the Complaint as drafted.
DEFENDANT'S REPLY

Defendant submits a reply memorandum of law. MasterCard disputes Plaintiff's claim that the contract between MasterCard and PNC required PNC to include an indemnification provision in its agreement with merchants such as Plaintiff. MasterCard cites to the Standards and argues that they make clear that MasterCard holds its acquiring banks (such as PNC) solely responsible for ADC Assessments, contrary to [*6]Plaintiff's contentions about interlocking relationships among Plaintiff, MasterCard and PNC. According to MasterCard, PNC was free to challenge the 2011 and 2012 Case Management Fees and ADC Assessments, but did not do so, and Plaintiff cannot step into PNC's shoes and assert such a challenge.
MasterCard further argues that Plaintiff is not a proper beneficiary of the equitable subrogation doctrine, as it is unlike an insurer that plays no role in the losses suffered by the insured. According to MasterCard, Plaintiff was in a position to prevent the two data breaches by maintaining a secure network, and failed to do so. MasterCard claims that Plaintiff can seek recovery for its damages either directly from the wrongdoer, i.e. the cyber thieves who breached its system, or from PNC, which "took its money." It also argues that a balancing of the equities in connection with equitable subrogation favors MasterCard. MasterCard's ADC program is designed to promote the security network on which banks, cardholders, merchants and the public rely, and provides stability in transactions among banks and merchants. Because MasterCard's imposition of the 2011 and 2012 Case Management Fees and ADC Assessments was to the benefit of those affected by the security breaches, the balancing of the equities favors MasterCard over Plaintiff.
STANDARD OF REVIEW ON A MOTION TO DISMISS
In determining whether a complaint is sufficient to withstand a motion to dismiss under CPLR 3211(a)(7), the sole criterion is whether the pleading states a cause of action (Cooper v 620 Prop. Assoc., 242 AD2d 359 [2d Dept 1997], citing Weiss v Cuddy & Feder, 200 AD2d 665 [2d Dept 1994]). If from the four corners of the complaint factual allegations are discerned which, taken together, manifest any cause of action cognizable at law, a motion to dismiss will fail (511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002]; Cooper, supra, 242 AD2d at 360). The court's function is to " accept ... each and every allegation forwarded by the plaintiff without expressing any opinion as to the plaintiff's ability ultimately to establish the truth of these averments before the trier of the facts'" (id., quoting 219 Broadway Corp. v Alexander's, Inc., 46 NY2d 506, 509 [1979]). The pleading is to be liberally construed and the pleader afforded the benefit of every possible favorable inference (511 West 232nd Owners Corp., supra). A plaintiff may rest upon the matter asserted within the four corners of the complaint and need not make an evidentiary showing by submitting affidavits in support of the complaint. A plaintiff is at liberty to stand on the pleading alone and, if the allegations are sufficient to state all of the necessary elements of a cognizable cause of action, will not be penalized for not making an evidentiary showing in support of the complaint (Kempf v Magida, 37 AD3d 763 [2d Dept 2007]; see also Rovello v Orofino Realty Co., 40 NY2d 633, 635-636 [1976]).[FN7]

THE FIRST, SECOND, SIXTH AND SEVENTH
CAUSES OF ACTION FOR BREACH OF CONTRACT
The essential elements of a cause of action for breach of contract are: the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages (see, e.g., Brualdi v Iberia Lineas Aereas de Espana, S.A., 79 AD3d 959 [2d Dept 2010]; JP Morgan Chase v J.H. Electric of New York, Inc., 69 AD3d 802 [2d Dept 2010]).
Jetro complains here of a breach by MasterCard of MasterCard's agreement with PNC. But Jetro is not in a contractual relationship with MasterCard or otherwise in privity with MasterCard, an essential to standing to maintain an action for breach of contract (see, e.g., Plaiser v Royal Home Sales, 81 AD3d 799 [2d Dept 2011]; CDJ Builders Corp v Hudson Group Construction Corp., 67 AD3d 720 [2d Dept 2009]; see also A Citizens Defending Libraries v Marx, 135 AD3d 582 [1st Dept 2016]; Bond & Broadway, LLC v Funding Exchange, Inc., 132 AD3d 488 [1st Dept 2015]; May v U.S. HIFU, LLC, 98 AD3d 1004 [2d Dept 2012]). While a third party beneficiary has standing to sue for breach of contract (see Hillside Metro Associates, LLC v JPMorgan Chase Bank, NA, 747 F3d 44, 49 [2d Cir 2014]), Jetro does not claim that it should be treated as a third party beneficiary; its contract claim rises or falls on the argument that Jetro should be regarded as equitably subrogated to PNC's rights to sue on its contract with MasterCard.
Equitable subrogation is a concept that is a feature of insurance law; when an insurer pays for losses by its insured that were occasioned by a wrongdoer, the insurer is entitled to seek recovery from the wrongdoer for the monies the insurer expended (Fasso v Doerr, 12 NY3d 80, 86-87 [2009]). While a right to subrogration may be created by contract, equitable subrogation is, as its name implies, an equitable doctrine, arising in the insurance context and providing that an insurance carrier, upon payment of a loss, becomes subrogated to the rights and remedies of its assured to proceed against a party primarily liable without the necessity of a formal assignment. Stated differently, a surety who pays the principal's debt becomes subrogated to the rights and remedies of the creditor (New York Board of Fire Underwriters v Trans Urban [*7]Construction Co., 91 AD2d 115, 119-120 [1st Dept 1983] [Kassal, J], affd, 60 NY2d 912 [1983]). The equitable principle is that an insurer who has been compelled under its policy to pay a loss ought in fairness to be reimbursed by the party which caused the loss (Federal Ins. Co. v Arthur Andersen & Co., 75 NY2d 366, 372 [1990]). The principle is predicated on two related concepts:
First, that the party who causes injury or damage should be required to bear the loss by reimbursing the insurer for payments made on behalf of the injured party. Second, that the injured party should not recover twice for the same harm - once from its insurer and again from the wrongdoer (Fasso v Doerr, 12 NY3d 80, 87 [2009]).
The parties debate whether equitable subrogation is limited to insurers (see Winkelmann v Excelsior Ins. Co., 85 NY2d 577, 581 [1995]) [the "natural beneficiaries" of equitable subrogation are "insurers that have been compelled by contract to pay the loss caused by the negligence of another"]. The Appellate Division, Second Department has seemingly resolved this debate by its holding that the doctrine is broad enough to "include every instance in which one party pays a debt for another for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability (Hamlet at Willow Creek Dev. Co., LLC v Northeast Land Dev. Co., 64 AD3d 85, 105-106 [2d Dept 2009]).
Though Jetro can be said to have made the payment to PNC under compulsion (PNC simply withhold monies otherwise claimed to be due Jetro), this is not an instance in which Jetro paid a debt for which MasterCard is primarily answerable or that equity and good conscience require that MasterCard discharge. The debt in question is liability for the funds extracted by the computer thieves by their access to the credit cards of Jetro's customers and related administrative penalties and fees on account of the security breach of Jetro's systems. Primary liability for these debts is upon the thieves who wrongly breached Jetro's systems. MasterCard bargained, in its contract with PNC, to have the right to pass these charges on to PNC; PNC bargained, in its contract with Jetro, to have the right to pass these charges on to Jetro. Since Jetro was in the best position to safeguard its computer system, contractual agreements which place the risk of loss on Jetro are not unreasonable, unfair, or inequitable.
Stated another way, the party who caused the injury or loss is not MasterCard in its exercise of its contractual rights to pass damages caused by cyber criminals on to PNC and to recover related fines and administrative expenses. The wrongdoers were the cyber criminals. Hence, equitable subrogation would apply to permit Jetro to cover its losses from the cyber criminals; it would invite a double recovery — and be entirely circular — to allow Jetro to place the burden of the loss on MasterCard.
While it appears that PNC may have the contractual right, in its agreement with MasterCard, to dispute some or all of MasterCard's back charges, fines and [*8]assessments, it does not appear that PNC was obligated, by its contract with Jetro, to contest any such liabilities. Jetro concedes that its obligation to indemnify PNC is not limited to those liabilities which were either undisputed or subsequently determined to be legitimate. Nor does it appear that Jetro obtained, by its contract with PNC, an assignment or transfer of PNC's rights as against MasterCard. Thus, what Jetro is really trying to do here is to circumvent the provisions of the relevant contracts which put the risk of loss from cyber crime upon Jetro, which was in the best position to prevent it by securing its computer systems.[FN8]

Hamlet at Willow Creek Dev. Co. v Northeast Land Dev. Corp. [64 AD3d 85 2d Dept 2009], upon which Jetro relies, proves the point. That case involved a developer's payment of fees to a municipality attributable to over-excavation of land by a sub-contractor. The developer made the payment because the municipality had issued a stop-work order and the payment enabled work to resume. The sub-contractor had issued payment and performance bonds in favor of the municipality guaranteeing the sub-contractor's obligations. Although the developer and sub-contractor were not in privity of contract, the Court held that the developer could recover funds from the sub-contractor based upon the sub-contractor's liablity to the municipality on the payment and performance bonds on the basis of equitable subrogation. The developer, as equitable subrogee of the municipality, was entitled to step into the municipality's shoes and seek recovery from the sub-contractor. 
By contrast here, Jetro's funds were used solely to pay its own debt to PNC, a payment which cannot give rise to equitable subrogation (see Pathe Exch. Inc. v Bray Pictures Corp., 231 AD 465, 468 [1st Dept 1931]). While it is true that PNC was recouping monies it paid to satisfy a debt claimed against it by MasterCard, Jetro had agreed to indemnify PNC against MasterCard's claims and, thus, the debt was Jetro's.
While Jetro did not enter into a contract with MasterCard, Jetro, in its Complaint, concedes - and in fact emphasizes - that it was aware of MasterCard's Standards and their impact on merchants' agreements with acquiring banks, such as PNC. If Plaintiff was not comfortable with the Standards, it could have elected to not accept MasterCard credit cards as a means for customers to make payment at its stores. It could instead have to accept other credit cards only or not to accept credit cards at all. Jetro is a sophisticated merchant and was, or should have, been aware of the benefits and risks associated with the PNC Agreement and the Standards imposed on merchants accepting MasterCard at their stores. Jetro cannot rewrite the contractual agreements which place the risk of loss upon it.
The Court will grant the motion to dismiss the First, Second, Sixth and Seventh Causes of Action for breach of contract.
THE THIRD AND EIGHTH CAUSES OF ACTION FOR BREACH OF
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
Within every contract is an implied covenant of good faith and fair dealing (511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144 [2002]; Dalton v Educ. Testing Serv., 87 NY2d 384 [1995]; Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62 [1978]; Aventine Inv. Mgt., Inc. v Canadian Imperial Bank of Commerce, 265 AD2d 513 [2d Dept 1999]; Components Direct, Inc. v European American Bank and Trust Co., 175 AD2d 227 [2d Dept 1991]; La Barte v Seneca Resources Corp., 285 AD2d 974 [4th Dept 2001]; Tapps of Nassau Supermarkets, Inc. v Linden Blvd., L.P., 269 AD2d 306 [1st Dept 2000]). The covenant is breached when a party acts in a manner that deprives the other party of the right to receive benefits under their agreement (511 West 232nd Owners Corp., supra; Aventine Inv. Mgt., Inc., supra). The covenant encompasses any promises which a reasonable person in the position of the promisee would be justified in understanding were included (511 West 232nd Owners Corp., supra).

Here, Plaintiff's Third Cause of Action alleges that MasterCard breached the implied covenant of good faith and fair dealing in connection with the contract between MasterCard and PNC by imposing upon PNC the 2011 ADC Assessments (Complaint at ¶¶ 26-40). Similarly, Plaintiff's Eighth Cause of Action alleges that MasterCard breached the implied covenant of good faith and fair dealing in connection with the contract between MasterCard and PNC by imposing upon PNC the 2012 ADC Assessments (id. at ¶¶ 82-96). Because Jetro is not a party to the contract between PNC and MasterCard, Jetro cannot complain that MasterCard did something to deprive PNC of the benefits of that contract. Thus, the Third and Eighth Causes of Action shall be dismissed.
THE FOURTH AND NINTH CAUSES OF ACTION FOR UNJUST ENRICHMENT
The essence of unjust enrichment is that one party has received money or a benefit at the expense of another (Wolf v National Council of Young Israel, 264 AD2d 416 [2d Dept 1999]). To prevail on a claim of unjust enrichment, a plaintiff must establish that it conferred a benefit upon the defendant, and that the defendant will obtain that benefit without adequately compensating the plaintiff therefor (see, e.g., MT Property, Inc. v Ira Weinstein and Larry Weinstein LLC, 50 AD3d 751 [2d Dept 2008]). Stated somewhat differently, a plaintiff must show that: (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered (Cruz v McAneney, 31 AD3d 54, 59 [2d Dept 2006]). Plaintiff need not establish a wrongful act by the person enriched (id.).
Plaintiff's Fourth Cause of Action alleges that by imposing the 2011 Case Management Fee and the 2011 ADC Assessments upon PNC, MasterCard was [*9]unjustly enriched at the expense of Plaintiff (Complaint at ¶¶ 42-48). Plaintiff's Ninth Cause of Action mirrors its Fourth Cause of Action, and alleges that by imposing the 2012 Case Management Fee and the 2012 ADC Assessments upon PNC, MasterCard was unjustly enriched at the expense of Plaintiff (id. at ¶¶ 98-104). 
In both of these causes of action, Plaintiff fails to allege that it conferred any benefit on MasterCard. Any benefits that MasterCard obtained, such as recoupment for its losses and recovery of administrative fees, were obtained from PNC pursuant to the MasterCard/PNC agreement. And, in any event, it would not be against equity and good conscience to permit MasterCard to retain what Jetro seeks to recover. Jetro seeks to recover the amounts obtained from it by PNC under PNC's agreement with Jetro. As previously stated, the effect of the MasterCard/PNC and PNC/Jetro agreements was to place the risk of loss on Jetro. 
Accordingly, the branch of MasterCard's motion seeking to dismiss the Fourth and Ninth Causes of Action is granted.[FN9]

CONCLUSION
The Court has considered the following papers in connection with this motion:
1) Notice of Motion dated October 16, 2015;
2) Affirmation of Martin S. Hyman, Esq. dated October 15, 2015, together with the exhibits annexed thereto;
3) Memorandum of Law dated October 16, 2015;
4) Affidavit in Opposition of Megan McEntee, Esq. sworn to November 6, 2015, together with the exhibits annexed thereto;
5) Memorandum of Law in Opposition to Motion to Dismiss dated November 6, 2015;
6) Reply Memorandum of Law dated November 20, 2015.
Based on the foregoing papers and for the reasons stated, it is hereby
ORDERED that the motion by Defendant MasterCard International, Inc. to dismiss the Complaint of Plaintiff Jetro Holdings, LLC for failure to state a cause of action pursuant to CPLR 3211(a)(7) or, alternatively, to strike the said Complaint for failure to comply with the pleading requirements of CPLR 3014 or, alternatively, to require said Plaintiff to replead is granted in part, and denied in part; and it is further
ORDERED that the branch of the said motion which is to dismiss the said Complaint for failure to state a cause of action pursuant to CPLR 3211(a)7) shall be, and is hereby, granted and the Complaint is dismissed; and it is further
ORDERED that, the branches of the said motion which seek, pursuant to CPLR 3104, to strike the Complaint or require said Plaintiff to replead shall be, and hereby are, denied as academic.
The foregoing constitutes the Decision and Order of this Court.
Dated: May 3, 2016
White Plains, New York
ENTER :
__________________________
Alan D. Scheinkman
Justice of the Supreme Court



Footnotes

Footnote 1:The Fifth and Tenth Causes of Action, sounding in prima facie tort, have been voluntarily discontinued and need not be further discussed.

Footnote 2:The PNC Agreement is cited in the Complaint but is not annexed thereto.

Footnote 3:The Complaint notes that the $25,000 Non-Compliance Fine was later rescinded by MasterCard (id. at ¶ 54).

Footnote 4:Counsel's affirmation simply provides a copy of the Complaint as well as copies of certain decisions discussed in Defendants' memorandum of law.

Footnote 5:MasterCard also argues that Plaintiff has failed to comply with CPLR 3014's pleading requirements, and the Complaint should be stricken or Plaintiff should be required to replead. 

Footnote 6:Counsel does not provide any basis for her having personal knowledge as to the authenticity of these documents.

Footnote 7:Where the plaintiff submits evidentiary material, the Court is required to determine whether the proponent of the pleading has a cause of action, not whether he or she has stated one (Leon v Martinez, 84 NY2d 83 [1994]; Simmons v Edelstein, 32 AD3d 464 [2d Dept 2006]; Hartman v Morganstern, 28 AD3d 423 [2d Dept 2006]; Meyer v Guinta, 262 AD2d 463 [2d Dept 1999]). Affidavits may be used to preserve inartfully pleaded, but potentially meritorious claims; however, absent conversion of the motion to a motion for summary judgment, affidavits are not to be examined in order to determine whether there is evidentiary support for the pleading (Rovello v Orofino Realty Co., 40 NY2d 633, 635-636 [1976]; Pace v Perk, 81 AD2d 444, 449-450 [2d Dept 1981]; Kempf v Magida, 37 AD3d 763 [2d Dept 2007]; Tsimerman v Janoff, 40 AD3d 242 [1st Dept 2007]). Affidavits may be properly considered where they conclusively establish that the plaintiff has no cause of action (Taylor v Pulvers, Pulvers, Thompson & Kuttner, P.C., 1 AD3d 128 [1st Dept 2003]; M & L Provisions, Inc. v Dominick's Italian Delights, Inc., 141 AD2d 616 [2d Dept 1988]; Fields v Leeponis, 95 AD2d 822 [2d Dept 1983]).

Footnote 8:This does not mean that Jetro's systems were lax. It means only that Jetro was best positioned to secure its own network.

Footnote 9:In view of the dismissal of the Complaint for failure to state a cause of action, the Court need not reach the argument by MasterCard that the pleading fails to comply with CPLR 3014. While Plaintiff should not have elected to re-number paragraphs in the midst of its pleading, the Complaint is sufficiently compliant with CPLR 3014.